UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

LINIA K. LAXTON,                    )
                                    )
            Plaintiff,              )
                                    )
v.                                  )        No.:   3:09-CV-49
                                    )               (VARLAN/SHIRLEY)
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
            Defendant.              )


## MEMORANDUM OPINION

This matter is before the Court for disposition of plaintiff's Motion for Judgment on

the Pleadings [Doc. 12] and defendant's Motion for Summary Judgment [Doc. 16]. Plaintiff

Linia K. Laxton ("plaintiff") seeks judicial review of the decision of the Administrative Law

Judge (the "ALJ") denying her benefits, which is the final decision of the defendant, Michael

J. Astrue, Commissioner of Social Security ("the Commissioner").

On September 19, 2006, plaintiff filed an application for Disability Insurance Benefits

("DIB") [Tr. 11]. On April 11, 2007, plaintiff filed an application for Supplemental Security

Income ("SSI") [Tr. 11]. In both applications, plaintiff claimed a period of disability which

began on June 26, 2006 [Tr. 11]. After her application was denied initially and also denied

upon reconsideration, plaintiff requested a hearing. On July 15, 2008, a hearing was held

before an ALJ to review plaintiff's claim [Tr. 476-89]. On September 3, 2008, the ALJ

found that plaintiff was not disabled [Tr. 11-18]. The Appeals Council denied plaintiff's

request for review on December 16, 2008; thus the decision of the ALJ became the final

decision of the Commissioner [Tr. 2-5]. Plaintiff now seeks judicial review of the Commissioner's decision.

## I. ALJ Findings

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since June 26, 2006, the alleged onset date (20 CFR 404.1520(b), and 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following "severe" combination of impairments: a history of a left lumpectomy for breast cancer in 2003, followed by residual lymphedema in the left upper extremity that eventually resolved; fibromyalgia; a history of heart palpitations controlled with beta blocker medication; a history of hypertension, which is controlled with medication; probable mild fasciitis and/or heel spurs in both feet; a non-specified anxiety disorder; and a non-specified depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she may only "occasionally" balance and reach overhead with both upper extremities; she should avoid working exposure to vibration; and she has "limited but satisfactory" ability to maintain attention/concentration,

2

understand, remember, and carry out detailed or complex job instructions, respond appropriately to changes in the work setting, maintain a regular schedule, and complete a normal work week.

6.      The claimant is capable of performing past relevant work as a cashier. The impartial vocational expert testified that this work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.      The claimant has not been under a disability, as defined in the Social Security Act, from June 26, 2006, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 13-17].

## II.      Disability Eligibility

An individual is eligible for DIB payments if he is insured for DIB, has not attained retirement age, has filed an application for DIB, and is under a disability. 42 U.S.C. § 423(a)(1). An individual is eligible for SSI payments if he has financial need and he is aged, blind, or under a disability. *See* 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Whether a DIB or SSI claimant is under a disability is evaluated by the Commissioner pursuant to a five-step analysis, summarized as follows:

1.   If claimant is doing substantial gainful activity, he is not disabled.

2.   If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.   If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.   If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.   Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant bears the burden of proof at the first four steps. *Id.* The burden of proof shifts to the Commissioner at step five. *Id.* At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Jones*

*v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203

F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## III.    Standard of Review

        In reviewing the Commissioner's determination of whether an individual is disabled,

the Court is limited to determining whether the ALJ applied the correct legal standards and

whether there is substantial evidence in the record to support the ALJ's findings. *Longworth*

*v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).    If the ALJ's findings are

supported by substantial evidence based upon the record as a whole, they are conclusive and

must be affirmed.    *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387 (6th Cir. 2004); 42 U.S.C.

§ 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th

Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).    It is immaterial

whether the record may also possess substantial evidence to support a different conclusion

from that reached by the ALJ or whether the reviewing judge may have decided the case

differently.  *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986);

*Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are

not subject to reversal merely because there exists in the record substantial evidence to

support a different conclusion.").  The substantial evidence standard is intended to create a

"zone of choice within which the Commissioner can act, without the fear of court

interference." *Buxton*, 246 F.3d at 773 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th

Cir. 1986)).  The Court will not "try the case de novo, nor resolve conflicts in the evidence,

nor decide questions of credibility." *Walters*, 127 F.3d at 528.  On review, a plaintiff bears

the burden of proving his or her entitlement to benefits.  *Boyes v. Sec'y. of Health & Human*

*Serv.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir.

1971)).

**IV.    Analysis**

On appeal, plaintiff argues that substantial evidence did not support the ALJ's

decision that she was not under a disability.  Plaintiff contends that the ALJ incorrectly

determined her physical residual functional capacity ("RFC") because he improperly found

that her statements about the severity of her fibromyalgia pain and its limiting effects were

not credible.  Specifically, plaintiff argues that the ALJ erred when finding her statements

to be incredible by:

> (i)     Inaccurately cataloging plaintiff's daily activities, mischaracterizing or exaggerating the intensity of those activities, and improperly concluding that plaintiff's ability to perform those activities was inconsistent with plaintiff's allegation of disabling fibromyalgia pain; and
>
> (ii)    Improperly discounting plaintiff's subjective complaints of fibromyalgia pain because of their inconsistency with treatment notes from just one physical examination.

Plaintiff argues that these two procedural errors led the ALJ to improperly determine that her

allegation about the degree to which she was limited by fibromyalgia pain was not credible.

Plaintiff argues that this improper determination of her credibility consequently resulted in

the ALJ's conclusion that she had the RFC to perform light work.  Plaintiff concludes that,

because the analysis of her credibility was improper, the ALJ's ultimate determination of her

RFC was not supported by substantial evidence.  Plaintiff maintains that her fibromyalgia pain, in combination with her chronic lymphedema and "a small list of other impairments that impact her functioning," renders her unable to perform basic job functions and therefore prohibits her from obtaining gainful employment [Doc. 13, p. 5].  Accordingly, plaintiff concludes that she is under a disability and entitled to DIB and SSI payments.

In response, the Commissioner contends that substantial evidence supported the ALJ's determination of plaintiff's RFC.  First, the Commissioner argues that there was nothing improper about the ALJ's determination that plaintiff's statements about her fibromyalgia pain—and  the degree to which that pain limited her functioning—were not credible.  The Commissioner argues that the ALJ did not commit any procedural errors when assessing plaintiff's credibility because she "provided specific reasons for the credibility finding, the finding was supported by the record, and the decision was sufficiently specific to make clear to any subsequent reviewers the weight that she gave to [plaintiff]'s statements and the reasons for the weight." [Doc. 17, p. 21].  The Commissioner also argues that, even if the ALJ did commit procedural errors when evaluating the credibility of plaintiff's statements, the errors were harmless because the ALJ's ultimate determination of plaintiff's RFC was supported by substantial evidence—namely five medical opinions provided by four different consultative physicians.  The Commissioner concludes that substantial evidence supported the ALJ's determination that plaintiff has the RFC to perform her past relevant work and that plaintiff is therefore not under a disability and not entitled to DIB and SSI payments.

### A.     The RFC Determination

An ALJ must determine a DIB and SSI claimant's RFC between steps three and four of the five-step sequential disability evaluation process.  20 C.F.R. § 404.1520(a)(4).  A claimant's RFC is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).  In order to determine a claimant's RFC, the ALJ must consider "any statements about what [the claimant] can still do that have been provided by medical sources, whether or not they are based on formal medical examinations," and "descriptions and observations of [the claimant's] limitations from [her] impairment(s), including limitations that result from [the claimant's] symptoms, such as pain, provided by [the claimant], [the claimant's] family, neighbors, friends, or other persons."  20 C.F.R. § 404.1545(a)(3).

When a claimant alleges that her severe impairment causes pain that results in functional limitations, the ALJ must determine whether that allegation "can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(a).  "Objective medical evidence" means "medical signs and laboratory findings."  *Id.*; *see* 20 C.F.R. § 404.1528 (medical signs are "anatomical, physiological, or psychological abnormalities which can be observed, apart from [the claimant's] statements" and laboratory findings are "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques").  "Other evidence" includes "statements or reports from [the claimant], [the claimant's] treating or nontreating source, and others about [the claimant's] medical history, diagnosis, prescribed

treatment, daily activities, efforts to work, and any other evidence showing how [the claimant's] impairment(s) and any related symptoms affect [the claimant's] ability to work." *Id.* "Other evidence" also includes the claimant's statements about her pain and any description provided by the claimant or any other source about how that pain affects the claimant's activities of daily living and ability to work. *Id.*

When a claimant's allegation about the extent to which pain limits her functioning cannot be substantiated with objective medical evidence, the ALJ must decide whether the "other evidence" corroborates or supports the allegation. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *see* 20 C.F.R. § 404.1545(e) ("Pain...may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological, or psychological abnormalities considered alone."). Typically, some of the most important pieces of "other evidence" are the claimant's own subjective statements about the intensity, persistence, and functionally limiting effects of the pain. In order to properly determine whether the claimant's own subjective statements actually support her allegation of functional limitation due to pain, the ALJ must first "make a finding on the credibility of [the claimant]'s statements based on a consideration of the entire case record," including "any statements and other information provided by treating or examining physicians." *Id.* Essentially, the ALJ must decide whether the claimant is telling the truth about the degree to which pain limits her personal activities. *Id.* If the ALJ decides that the claimant's statements are credible, then he may move on to determine whether the statements in fact support the claimant's allegation. If the ALJ decides that the claimant's statements are not

credible, then he may discount their probative value accordingly and move on to consider

whether there is additional "other evidence" that corroborates or supports the claimant's

allegation.

When a claimant's medically determinable "severe" impairment is fibromyalgia, the

extent to which she is functionally limited usually cannot be substantiated with objective

medical evidence. Plaintiff notes in her memorandum that there are few medical signs or

laboratory findings that are useful in diagnosing fibromyalgia:

> Fibromyalgia is defined as "[a] syndrome of chronic pain of
> musculoskeletal origin but uncertain cause. The American
> College of Rheumatology has established diagnostic criteria that
> include pain on both sides of the body, both above and below
> the waist, as well as in an axial distribution (cervical, thoracic,
> or lumbar spine or anterior chest); additionally there must be
> point tenderness in at least 11 of 18 specified sites."[1]

[Doc. 13, p. 3 (quoting Stedman's Medical Dictionary as cited in *Willoughby v. Comm'r of*

*Soc. Sec.*, 332 F. Supp. 2d 542, 546 (W.D.N.Y. 2004))]. The Court of Appeals for the Sixth

Circuit has recognized the difficulty that fibromyalgia presents for disability determination:

> In stark contrast to the unremitting pain of which [fibromyalgia]
> patients complain, physical examinations will usually yield
> normal results–a full range of motion, no joint swelling, as well
> as normal muscle strength and neurological reactions. There are
> no objective tests which can conclusively confirm the disease;
> rather it is a process of diagnosis by exclusion and testing of

---

[1]Plaintiff refers to the diagnostic technique of checking for point tenderness as a "trigger
point test." Plaintiff explains: "When discussing fibromyalgia, courts use the terms 'trigger points'
and 'tender points' interchangeably." [Doc. 13, p. 4 (citing *Beauclair v. Barnhart*, 453 F. Supp. 2d
1259, 1276 (D. Kan. 2006))].

certain 'focal tender points' on the body for acute tenderness which is characteristic in [fibromyalgia] patients.

*Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817-18 (6th Cir. 1988). As it is difficult to pin down objective medical evidence to support a diagnosis of fibromyalgia, it is even more difficult to produce objective medical evidence that shows the degree to which fibromyalgia limits the functioning of its victim. Plaintiff recognizes that, "because of the subjective nature of fibromyalgia, the credibility of a claimant's testimony regarding her symptoms takes on substantially increased significance." [*Id.*, p. 14].

In this case, plaintiff alleged that she suffered from fibromyalgia pain that was so severe that it rendered her totally unable to work. The ALJ found at steps two and three of the sequential evaluation process that plaintiff's fibromyalgia, in combination with some lesser impairments, was a medically determinable "severe" impairment that did not meet or medically equal one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 [Tr. 13]. Before moving to step four, the ALJ was required to determine plaintiff's RFC. Because the functionally limiting effects of plaintiff's fibromyalgia pain could not be substantiated by objective medical evidence, the ALJ was required to consider whether "other evidence" corroborated or supported plaintiff's allegation that her pain was so severe that it left her totally unable to work.[2] *See* 20 C.F.R. § 404.1529(a). The ALJ considered

---

[2]The ALJ stated that "fibromyalgia is an exclusionary diagnosis frequently given by physicians when they cannot pinpoint what, if anything, is wrong" when a patient presents with "diffuse pain all over her body." [Tr. 16]. Presumably, the ALJ meant to indicate that, in line with other fibromyalgia cases, there was no objective medical evidence that plaintiff's pain rendered her unable to work.

two types of "other evidence": (1) plaintiff's own statements about the severity of her pain and its limiting effects; and (2) medical opinions about the severity of plaintiff's pain and its limiting effects provided by consultative reviewing physicians [Tr. 14-17]. The ALJ then determined that plaintiff had the RFC to perform light work with the additional restrictions that "she may only occasionally balance and reach overhead" and that "she should avoid working in exposure to vibration." [Tr. 14]. The Court will address in turn the manner in which the ALJ considered both types of "other evidence."

## B. The ALJ's Consideration of Plaintiff's Own Statements

In order to consider whether plaintiff's own statements actually corroborated or supported her allegation that she was totally unable to work, the ALJ had to decide whether the statements were credible. *See* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2. The ALJ found that "[plaintiff]'s statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible to the extent that they are inconsistent with [the determination that she has the RFC to perform light work]." [Tr. 16]. The ALJ gave two specific reasons for this finding. First, the ALJ pointed out that plaintiff's statements were inconsistent with the March 27, 2008 examination report of state disability determination services ("DDS") physician Dr. Eva Misra, M.D., which noted that plaintiff had no overt tenderness indicative of fibromyalgia [Tr. 16, 242-44]. The ALJ stated that "Dr. Misra, in her most recent consultative examination of [plaintiff] in March 2008, noted that [plaintiff] had no trigger point areas of tenderness characteristic of a diagnosis of fibromyalgia." [Tr. 16]. Presumably, the ALJ interpreted Dr. Misra's report to mean that plaintiff presented with

no fibromyalgia pain on the day she was examined. Second, the ALJ pointed out that plaintiff's statements about the severity of her pain and its limiting effects were inconsistent with her self-reported daily activities. The ALJ stated that "the variety of activities that the claimant reported she performs also tends to negate the degree of her allegations of pain" and "reflects on her ability to perform a reduced range of light work." [Tr. 17].

An ALJ's finding about the credibility of a claimant's allegation of disabling pain is entitled to deference. *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 531 (6th Cir. 1992) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007) ("while credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence"). However, in "close cases"—those where making a finding about the credibility of a claimant's allegation of pain was difficult for the ALJ—the Sixth Circuit has instructed that a court reviewing the ALJ's credibility finding should "bear in mind that '[t]he Social Security Act is a remedial statute which must be liberally applied; its intent is inclusion rather than exclusion." *Cohen*, 964 F.2d at 531 (quoting *Marcus v. Califano*, 615 F.2d 23, 29 (2d Cir. 1979)). In other words, a reviewing court should check to be sure that the ALJ erred, if at all, in favor of finding the claimant credible.

(i)    **The ALJ's Consideration of the Consistency of Dr. Misra's Report with Plaintiff's Allegation of Disabling Pain**

The first reason the ALJ gave for rejecting the credibility of plaintiff's allegation of disabling pain was that the allegation was inconsistent with the March 27, 2008 examination report of Dr. Misra. [Tr. 16, 242-44]. Dr. Misra's report stated:

> This is a 48-year old white female with the following allegations: She was diagnosed with fibromyalgia in 2005. She has not tried physical therapy or water therapy. She tries to exercise but "cannot do it." . . . . She keeps a 6/10 on the pain scale . . . . She cannot do her chores "like she used to."

[Tr. 242]. Dr. Misra noted that, although plaintiff complained of a history of fibromyalgia, "she was not overtly tender today" and that she had "no tender points" in her extremities [Tr. 243-44].

The ALJ addressed Dr. Misra's report as follows: "Dr. Misra, in her most recent consultative examination of [plaintiff] in March 2008, noted that [plaintiff] had no trigger point areas of tenderness characteristic of a diagnosis of fibromyalgia." [Tr. 16]. In the very next sentence, the ALJ stated that "the degree of [plaintiff]'s complaints that she believes she has heel spurs on both of her feet is *also considered excessive*." [Tr. 16 (emphasis added)]. Presumably, the ALJ meant to indicate that she found plaintiff's subjective statements about the severity of her fibromyalgia pain and the degree to which that pain was

functionally limiting to be exaggerated and "excessive" because Dr. Misra did not find any

discernible manifestation of fibromyalgia when she examined plaintiff.[3]

Plaintiff correctly points out that, because fibromyalgia pain waxes and wanes and

because there are no objective tests which can conclusively confirm the disease, "a one-time

physical examination is of little value when attempting to evaluate the severity of [a

claimant's] fibromyalgia." [Doc. 13, p. 21]; *see*, *e.g., Preston*, 854 F.2d at 817-18; *Daniels*

*v. Astrue*, 2009 U.S. Dist. LEXIS 32110 (M.D. Pa. April 15, 2009). The Sixth Circuit has

held that an ALJ's reliance on the results of a single physical examination to find that a

claimant's statements about his fibromyalgia pain were not credible is "inappropriate."

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d at 248 ("the nature of fibromyalgia itself renders

such a brief analysis and overemphasis upon objective findings inappropriate") (citing

*Canfield v. Comm'r of Soc. Sec.*, 2002 WL 31235758, at *1 (E.D. Mich. Sept. 13, 2002)

(stating that it would be "nonsensical to discount a fibromyalgia claimant's subjective

---

[3]The ALJ summarized plaintiff's subjective statements about the severity of her fibromyalgia pain and its limiting effects as follows:

> She testified that she is in pain daily, despite the pain and anti-inflammatory medications that she takes. She estimated that she can only sit 20-25 minutes at one time before needing to change positions to relieve pain. On a bad day, she rated her pain level as being a 10 on a scale from 1-10. On a good day, she rated her pain level as being a "6 or 7." She asserted that she has about two bad days per week.

[Tr. 15-16]. Plaintiff does not dispute the accuracy of the ALJ's recapitulation of her statements.

complaints of pain based upon lack of objective medical evidence, as such evidence is generally lacking with fibromyalgia patients"))).[4]

Accordingly, the Court finds that plaintiff's allegation of disabling pain is in no way inconsistent with Dr. Misra's report. Plaintiff acknowledges, and the Court agrees, that Dr. Misra's report of plaintiff's "negative trigger point test" was relevant to evaluating the credibility of plaintiff's allegation of disabling pain [Doc. 13, p. 22]. However, the "trigger point test" conducted by Dr. Misra was only one of many trigger point tests documented in the record. Because fibromyalgia pain waxes and wanes and because diagnosis of fibromyalgia involves a *process* of testing, the results of just one trigger point test considered in isolation are not probative of anything. *See Preston*, 854 F.2d at 817-18. Plaintiff correctly notes in her memorandum that the record contains at least eight physical examination reports that document positive trigger point tests.[5] Considered cumulatively, the results of plaintiff's trigger point tests are not inconsistent with plaintiff's allegation of disabling fibromyalgia pain.

The Court finds that ALJ erred by relying exclusively on Dr. Misra's report and improperly determining that it was inconsistent with plaintiff's allegation of disabling pain.

_____

[4]In *Rogers*, the Court of Appeals concluded that the fact that the plaintiff exhibited "normal reflexes" and "normal sensory testing" during an examination was not inconsistent with the plaintiff's allegation of disabling fibromyalgia pain.

[5]Plaintiff states: "In support of the fibromyalgia diagnosis, Dr. Burdeaux's physical examinations frequently showed that Plaintiff was positive for multiple paired trigger points." [Doc. 13, p. 4 (citing Tr. 186, 193, 196, 199, 205, 247, 379)]. Plaintiff also points out that Dr. Misra herself recorded that plaintiff was "very tender today" at a consultative examination on December 1, 2006 [Doc. 13, p. 4 (citing Tr. 351-53)].

Accordingly, the Court finds that the ALJ's first reason for finding plaintiff's allegation to be incredible was not supported by substantial evidence.

### (ii) The ALJ's Consideration of the Consistency of Plaintiff's Daily Activities with Plaintiff's Allegation of Disabling Pain

The second reason the ALJ gave for rejecting the credibility of plaintiff's allegation of disabling pain was that the allegation was inconsistent with plaintiff's self-reported daily activities [Tr. 17]. Plaintiff asserts that the ALJ relied "in large part" on this perceived inconsistency when making the credibility finding [Doc. 13, p. 18]. Plaintiff argues that the ALJ erred by "mischaracteriz[ing] the scope" of her daily activities, failing to explain the effects of those activities on plaintiff, and by including among those activities some actions that plaintiff herself "never discussed." [*Id.*]. Essentially, plaintiff argues that the ALJ badly misconstrued her statements about her daily activities to arrive at incorrect factual findings about exactly what plaintiff did—and was capable of doing—in the conduct of her personal life. Plaintiff states in her memorandum that many of the facts concerning her personal activities that were cited by the ALJ as being inconsistent with a disabling level of pain were "exaggerated or out of context," "squarely contradicted by the record," or "not in the record at all." [*Id.*]. Thus, plaintiff argues that the ALJ predicated her analysis of the credibility of plaintiff's allegation on incorrect factual findings. Plaintiff therefore concludes that the ALJ's credibility finding was not supported by substantial evidence.

In response, the Commissioner asserts that the ALJ's credibility finding was *not* based "in large part" on her belief that plaintiff's allegation of disabling pain was

inconsistent with plaintiff's self-reported daily activities. Instead, the Commissioner asserts that the ALJ's credibility finding was based primarily on a comparison of plaintiff's allegation with medical opinions about plaintiff's condition provided by consultative physicians. The Commissioner argues that plaintiff's allegation of disabling fibromyalgia pain was inconsistent with these medical opinions, and, accordingly, the ALJ's finding that the allegation was incredible was justified by the inconsistency.

In response to plaintiff's assertions that the ALJ mischaracterized and exaggerated the intensity of plaintiff's daily activities and ascribed the performance of some activities to plaintiff without any record evidence, the Commissioner argues that it was reasonable for the ALJ to "infer" that plaintiff performed some personal activities based on the fact that plaintiff testified about performing other similar or more broadly defined activities [Doc. 17, p. 20]. The Commissioner essentially argues that any fact-finding errors committed by the ALJ as a result of her inferential reasoning were minor and inconsequential. The Commissioner also argues that, even if the ALJ made some fact-finding errors with regard to plaintiff's personal activities, "the ALJ's consideration of [the erroneous facts] was harmless in light of the overwhelming evidence [in the form of medical opinions] supporting her credibility finding." [*Id.*].

It is clear to the Court that the ALJ determined that plaintiff's allegation of totally disabling pain was inconsistent with plaintiff's self-reported daily activities. It is not clear—nor is it particularly important—whether this determination was the *primary* basis for the ALJ's finding that plaintiff's allegation was not credible. The ALJ simply stated that

"the variety of activities that the claimant reported she performs...tends to negate the degree of her allegations of pain." [Tr. 17]. The ALJ summarized plaintiff's statements about her daily activities as follows:

> Even though [plaintiff] testified that she performs very few daily activities, when she initially filed her applications for disability benefits, she reported performance of a variety of daily activities. She indicated that she performs such routine housework as washing dishes, loading and unloading the dishwasher, dusting, running the vacuum, sweeping the floor, straightening up the house, cleaning the bathroom, taking out the trash, making her bed, changing bed linens, and doing the laundry. She also asserted that she performs such other daily activities as driving, running errands, watching television, listening to the radio and/or music, tending to her personal self-care needs, cooking, reading, retail and grocery shopping, paying bills, managing money, talking on the telephone, visiting with others, dating a boyfriend, and watching her grandchildren play ball. The wide variety of daily activities [plaintiff] reported she performs not only tends to minimize the degree of her complaints of pain and other subjective complaints, but reflects on her ability to perform a reduced range of light work.

[Tr. 17].

Plaintiff disputes the accuracy of the ALJ's listing of her daily activities. Plaintiff argues that she never stated that she "sweeps, cleans the bathroom, takes out the trash, makes her bed, and changes the linens." [Doc. 13, p. 18]. In response, the Commissioner points out that plaintiff herself recorded on a "Function Report" dated October 9, 2006, that she was able to do "laundry" and able to "make beds." [Tr. 152]. The Commissioner also points out that plaintiff reported on September 30, 2006, that she was able to do "dishes, laundry, and beds." [Tr. 158]. Finally, the Commissioner points out that plaintiff reported to examining

DDS clinical psychologist Alice Garland, M.S., on March 31, 2008, that "she may do a lot of laundry" and that "she does a lot of light housework, but she has to pace herself." [Tr. 240]. The Commissioner did not bother to cite any documentation in the record supporting the ALJ's specific findings that plaintiff was able to sweep, clean the bathroom, or take out the trash. Accordingly, the Court finds that the ALJ's findings that plaintiff was capable of "making her bed" and "changing linens" were supported by substantial evidence [Tr. 17]. The Court finds that the ALJ's findings that plaintiff was capable of "sweeping the floor," "cleaning the bathroom," and "taking out the trash" were not supported by substantial evidence.

As for the rest of the ALJ's summary of plaintiff's daily activities, the Court finds that, although it was lamentably imprecise, it was supported by substantial evidence. Plaintiff argues that the ALJ's finding that she performs "routine housework" was a mischaracterization of the tasks that she actually performs at home [Doc. 13, p. 18]. Plaintiff argues that "the Decision states that Plaintiff performs 'routine' housework, but Plaintiff actually stated that she cleans house only when she is able and that what light work she performs requires her to take breaks or ask for help." [*Id.*]. Plaintiff also argues that she testified at the hearing that she was no longer able to perform some activities listed in the ALJ's summary [*Id.*, p. 8]. Plaintiff finally argues that the ALJ did not expressly discuss the frequency with which she performed the activities listed in the summary [*Id.*].

The Court acknowledges that plaintiff consistently reported that household tasks were difficult for her and that the ALJ should have explicitly mentioned plaintiff's difficulties in

his narrative decision. The Court also acknowledges that the ALJ should have expressly discussed activity frequency when summarizing plaintiff's daily activities. But the Court is not persuaded by plaintiff's argument that the ALJ's summary is "not grounded in the record." [Doc. 13, p. 18]. The Court finds that, despite its shortcomings, the ALJ's summary of plaintiff's daily activities—absent the unsubstantiated factual findings discussed *supra*—was supported by substantial evidence. The Court notes, as further explained *infra*, that plaintiff's semantic attack on the ALJ's summary is superfluous to the Court's disposition of this case.[6]

The Sixth Circuit has held that minor household chores, driving, and shopping are not inconsistent with a disabling level of pain. In *Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006), the court of appeals stated:

> [T]he fact that [a claimant] engages in minor life activities is not inconsistent with a disabling level of pain . . . . [In this case], Plaintiff testified that he engaged in minor household chores, such as helping his children get ready for school, helping to make lunch, vacuuming once a week, sweeping once a month, infrequent yard work, driving once a week, and infrequent grocery shopping. Plaintiff also testified that he went on a hunting trip with his family in November 2002. Plaintiff's ability to engage in these intermittent activities of relatively short duration does not negate the [allegation] that Plaintiff is unable to regularly engage in work due to his pain.

---

[6]Plaintiff recognizes that disputing the accuracy and completeness of the ALJ's summary of her daily activities is not critical to her case. Plaintiff states in her memorandum: "Even if this Court finds the ALJ's characterization of Plaintiff's activities to be complete and accurate, the ALJ Decision does not make it sufficiently clear why the activities cited therein evince an ability to do light work." [Doc. 13, p. 19].

*Meece*, 192 F. App'x at 465. The key question is thus whether a claimant is able, despite his pain, to engage in employment "on a regular and continuing basis." *Id.* (quoting 20 C.F.R. § 404.1545(b)). A claimant is not required to allege "that he suffers from a disabling level of pain at all times that prevents him from participating in any activities" in order to qualify for disability benefits. *Id.* The "mere fact that [a claimant] is able to perform some household activities when his level of pain allows him to do so is not inconsistent with [the claimant's allegation] that his pain prevents his from engaging in regular and continuous employment." *Id.*; *see also Cohen*, 964 F.2d at 524 (holding that a claimant suffering from chronic Epstein-Barr virus and associated chronic fatigue syndrome was disabled despite the facts that she was able to engage in ballroom dancing twice a week, for 3-4 hours at a time, and able to attend law school three days per week, for 3.5 hours at a time, because she "required significant rest at other times" and was therefore prevented from "working on a regular and continuing basis"); *Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967) ("The fact that [a claimant] can still perform simple functions, such as driving, grocery shopping, dish washing, and floor sweeping, does not necessarily indicate that [the claimant] possesses an ability to engage in substantial gainful activity. Such activity is intermittent and not continuous, and is done in spite of the pain suffered by [the claimant].").

When an ALJ finds that a claimant's allegation of disabling pain is not credible because it is inconsistent with the claimant's self-reported ability to intermittently perform minor household chores and basic personal activities, the finding is not supported by substantial evidence. *Meece*, 192 F. App'x at 467; *Cohen*, 964 F.2d at 531; *see also White*

22

*v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 788-789 (6th Cir. 2009) (holding that an ALJ's finding that a claimant's testimony about his fibromyalgia pain was not credible because it was inconsistent with his daily activities was not supported by substantial evidence); *Rogers*, 486 F.3d at 249 (holding that when an ALJ provides the inconsistency of a claimant's allegation of disabling pain with the claimant's ability to perform "somewhat minimal daily functions" as a reason for finding that the allegation was not credible, the reason is "insufficient to constitute substantial evidence").

In this case, even if the Court were to wholly accept as complete and accurate the ALJ's summary of plaintiff's daily activities, the fact that plaintiff was able to perform the activities listed is not inconsistent with plaintiff's allegation of disabling pain. Plaintiff's activities, as summarized by the ALJ, amount to nothing more than the "minor household chores," "minor life activities," and "minimal daily functions" that the court of appeals has held to be of little probative value when assessing the credibility of an allegation of disabling pain. The Court finds that the fact that plaintiff had the ability to perform the activities listed in the ALJ's decision was in no way inconsistent with plaintiff's allegation of disabling pain. Accordingly, the Court finds that the ALJ erred by finding that "the variety of daily activities [plaintiff] reported she performs...tends to negate the degree of her allegations of pain." [Tr. 17]. The Court concludes that there was not substantial evidence to support this finding.

### (iii) The ALJ's Credibility Finding was Not Supported by Substantial Evidence

As discussed *supra* in sections (i) and (ii), the Court finds that neither of the ALJ's two reasons for finding that plaintiff's allegation of disabling pain was not credible were supported by substantial evidence. Accordingly, the Court finds that the ALJ's finding that "[plaintiff]'s statements concerning the intensity, persistence, and limiting effects of [her fibromyalgia pain] are not credible" was itself not supported by substantial evidence [Tr. 16]. The ALJ did not articulate any valid reasons for discounting or rejecting plaintiff's own statements about the severity of her fibromyalgia pain and its limiting effects. Recalling that "the Social Security Act is a remedial statute which must be liberally applied" and that "its intent is inclusion rather than exclusion," the Court finds that the ALJ should have treated plaintiff's own statements as credible evidence when determining plaintiff's RFC. *Cohen*, 964 F.2d at 531. Because the ALJ did not do so, her overall determination of Plaintiff's RFC is suspect.

### C. The ALJ's Consideration of Medical Opinions Provided by Consultative Physicians

In addition to plaintiff's own statements about her fibromyalgia pain and its limiting effects, the ALJ also considered a second type of "other evidence" when making her RFC determination: medical opinions about the severity of plaintiff's pain and its limiting effects provided by consultative reviewing physicians. The Commissioner argues that, even if the ALJ did commit procedural errors when evaluating the credibility of plaintiff's own statements, the errors were harmless because the ALJ's ultimate determination of plaintiff's

RFC was supported by five medical opinions provided by four different consultative physicians. The Commissioner argues that these medical opinions alone constitute substantial evidence to support the ALJ's determination that plaintiff had the RFC to perform light work with some additional restrictions. The Court disagrees.

The ALJ summarized the medical opinions about plaintiff's physical condition as follows:

> [The determination of plaintiff's RFC is] supported by medical source statements from two State agency medical consultants, non-examining sources who reviewed much of the medical evidence of record. [The RFC determination is] also more than reasonable when one considers that the recent consultative physician, Dr. Misra, an examining source, opined that [plaintiff] has no physical impairment related limitations. Moreover, a third State agency medical consultant concluded that [plaintiff] has the residual functional capacity for medium exertional work. Although Dr. Misra initially restricted [plaintiff] to sedentary work when he consultatively examined her in December 2006, this appears to be a minimal as opposed to a maximal residual functional capacity assessment, as she concluded that [plaintiff] has no residual functional capacity limitations when she examined her in March 2008.

[Tr. 14-15 (citations to the record omitted)].

The Court stops short of analyzing whether the medical opinions cited by the ALJ in fact support the RFC determination. In a fibromyalgia case, an RFC determination cannot stand on consultative medical opinions alone. When an ALJ determines that a DIB and SSI claimant's fibromyalgia is a severe impairment, the claimant's own statements about the severity of his fibromyalgia pain and the extent to which that pain limits his functioning are of paramount importance to the determination of his RFC. A fibromyalgia sufferer's RFC

simply cannot be accurately determined without proper consideration of his own statements. Thus, if the ALJ erroneously rejects the claimant's statements as incredible, the entire RFC determination is flawed. In this case, the only other evidence that the ALJ relied on to support the RFC determination was in the form of consultative medical opinions. The Court finds that the medical opinions cited by the ALJ cannot, standing alone, constitute substantial evidence to support the ALJ's determination of plaintiff's RFC.

## V.    Conclusion

The Court concludes that the ALJ's determination that plaintiff had the RFC to perform her past relevant work was not supported by substantial evidence. For the foregoing reasons, defendant Commissioner's Motion for Summary Judgment [Doc. 16] is hereby **DENIED**, and plaintiff's Motion For Judgment on the Pleadings [Doc. 12] is hereby **GRANTED** only to the extent that it requests that this case be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for a new hearing consistent with this Order. On remand, the Commissioner shall determine plaintiff's RFC based on an analysis that either (1) treats plaintiff's own statements concerning the intensity, persistence, and limiting effects of her fibromyalgia pain as credible, or (2) articulates valid reasons—meaning reasons other than those relied upon by the ALJ and rejected by the Court in this Order—for treating plaintiff's statements as incredible.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE